IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLAUDIO JARRETT and KEYSTONE  :
FREIGHT CORP.,                     :        CIVIL ACTION
      Plaintiffs,           :
                                :
     v.                       :
                                :
TOWNSHIP OF BENSALEM, et al.,   :        No. 07-1480
      Defendants.        :

## MEMORANDUM AND ORDER

**Schiller, J.**                                                  **March 26, 2008**

Plaintiffs Claudio Jarrett and Keystone Freight Corp. ("Keystone") bring this action against Defendants Derek Goldstein and George Price, officers of the Bensalem Police Department ("Department"), Fred Harren, Director of Public Safety and Chief of Police for the Township of Bensalem, and the Township of Bensalem, a municipality. Pursuant to 42 U.S.C. § 1983, Plaintiffs allege that Defendants Goldstein and Price violated their civil rights by filing a police report that falsely blamed Plaintiff Jarrett for an automobile accident that occurred while he was driving a truck for Plaintiff Keystone. Plaintiffs further assert a *Monell* claim against Defendants Harren and Bensalem, alleging that they failed to instruct, supervise, control, and/or discipline Defendant Goldstein, thereby ratifying the officer's conduct. Presently before the Court is Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion is granted, and all claims are dismissed.

## I.     BACKGROUND

On June 16, 2006, Plaintiff Jarrett was operating a tractor-trailer owned by Plaintiff

Keystone, when he collided with a pickup truck being driven by non-party Jared Watson, who was

then a volunteer firefighter.  (Defs.' Mot. for Summ. J. [hereinafter Defs.' Mot.] Ex. A (Accident

Report) at 3 & Ex. E (Watson Dep.) at 15.)  Defendant Goldstein responded to the scene of the

collision, investigated the accident and prepared a report.  (Defs.' Mot. Ex A at 3; Pls.' Resp. to

Defs.' Mot. for Summ. J. [hereinafter Pls.' Resp.] Ex. H (Goldstein Dep.) at 27.)  Upon his arrival,

Defendant Goldstein found Watson slumped over his steering wheel and unconscious.  (Pls.' Resp.

Ex. H at 27-34.)  Watson was taken by rescue personnel to Frankford Torresdale Hospital.  (*Id.*;

Defs.' Mot. Ex. A at 5.)  Plaintiff Jarrett was taken by non-party Officer Wolfinger to Warminster

Hospital; Jarrett's injuries are not described by the parties. (Defs.' Mot. Ex. A at 4.)  Both vehicles

were towed to the public works garage; they were released by Goldstein on June 19, 2006.  (*Id.* at

5.)  Keystone employee Gerard Murray picked up the tractor trailer the same day.  (*Id.*)  The pickup

truck was moved to Davidson's, an automobile body shop.  (*Id.*)

Goldstein's initial report concluded that the "primary cause" of the accident was Plaintiff

Jarrett's "entering the highway without safe clearance."  (*Id.* at 4.)  However, Goldstein also

concluded that Watson "would have been able to stop his vehicle before contact had he been

traveling the speed limit, [although] he would have [had] to take a drastic evasive action to avoid

the crash."  (*Id.*)  Goldstein thus determined that Watson's excessive speed was a "contributing

factor" to the accident. (*Id.*)  Plaintiff Jarrett was not cited with any traffic offense; Watson was cited

with a registration violation, but not with any offense stemming from the accident.  (*Id.*)

On June 27, 2006, counsel for Plaintiff Keystone notified the Department that while

photographing Watson's vehicle, he noticed open alcoholic beverage containers inside.  (*Id.* at 5;

Defs.' Mot. Ex. B (Emails between Lt. Kirgan and Goldstein) at 1.)  Defendant Goldstein maintains

that he did not have probable cause at the accident scene to suspect that the unconscious Watson was driving while intoxicated and thus did not then search his vehicle; Plaintiffs allege that Goldstein did have probable cause, based on his statement that, ". . . I attempted to draw blood the night of the accident but the hospital refused to do [sic] take blood because the driver was critical." (*Id.*)  On June 28, 2006, Defendant Goldstein inspected the vehicle at Davidson's body shop, but found that "the contents of the vehicle had been removed by the owner." (Defs.' Mot. Ex. A at 5.)

The Department investigated the possibility that Watson was driving while intoxicated over the next several months; all of their findings were added as supplements to the initial accident report. (*Id.* at 5-9.)  Their investigation revealed that at least one of the "some twenty firefighters and paramedics on the scene" had smelled alcohol inside the Watson vehicle, though he did not know if it was coming from Watson's person.  (*Id.* at 8; Pls.' Resp. To Defs.' Statement of Facts [hereinafter Pls.' Resp. to Facts] ¶ 11.)  On November 2, 2006, a search warrant was issued to Frankford Torresdale Hospital for Watson's blood test results from the night of the accident.[1] (Defs.' Mot. Ex. A at 9.)  Watson's blood alcohol level was found to be .173 and he was charged with driving under the influence of alcohol ("DUI").  (Defs.' Mot. Ex. D (DUI report) at 2.)  Watson pled guilty to the charge and served ninety days in jail.  (Defs.' Mot. Ex. E. at 54-55.)

In spite of the newly discovered evidence regarding Watson's intoxication, the Department never changed, and maintains, their ultimate conclusion that Jarrett is primarily liable for the accident and Watson is secondarily liable. (*See* Defs.' Mot. Ex. A.)  On July 7, 2006, prior to the

---

[1] The Court notes the inconsistency between Goldstein's statement that the hospital refused to take Watson's blood and the Department's later receipt of blood test results.  While this inconsistency raises questions about Goldstein's credibility, it does not alter the outcome of the case, which turns on a pure question of law.

blood test results or DUI charge, Watson's insurance carrier notified Plaintiffs that they would not make any payment on their claim because of the finding of fault in the police report. (Pls.' Resp. Ex. M (Letter from Carrier) at 1.)  On August 29, 2007, the carrier offered to settle the claim with Plaintiffs for fifty percent, or $3,740.02, "based on comparative negligence." (*Id.* at 2.)  Meanwhile, Watson has filed a personal injury suit against Plaintiffs in the Philadelphia Court of Common Pleas. Plaintiffs have not informed this Court whether they have filed any counterclaims or joined any other relevant parties in the state case.

Plaintiffs claim that Defendants Goldstein and Price violated their due process rights under the Fourteenth Amendment by failing to properly investigate the accident, which resulted in a false allocation of fault.[2]  They further assert a *Monell* claim against Defendants Harren and Bensalem for endorsing and ratifying Defendant Goldstein's deviation from department protocol.  Defendants moved for summary judgment on all counts.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV.

---

[2] It is unclear to the Court why Officer Price is named as a defendant.  In his deposition, Defendant Price testified that he did not perform any investigative duties in this case.  (Defs.' Mot. Ex. K (Price Dep.) at 34-37.)  Plaintiffs' allegations against Officer Price are that he "sign[ed] off on the [police] report," "apparently made no effort to ensure that crucial evidence was retained or that those investigating the incident followed departmental procedures," and that "he failed to follow up on inaccuracies in the report once Officer Goldstein left the force." Plaintiffs do not cite to any evidence in support of any of these claims. (Pls.' Resp. to Facts ¶ 22.)  Indeed, Price's signature appears nowhere on the report, and the record does not support any of the other allegations.  (*See* Defs.' Mot. Ex. A.)  As Plaintiff cannot show any constitutional violation by Defendant Price, summary judgment will be granted to him, and Plaintiffs' claim against Price is dismissed.

P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When the moving party

does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by

showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).   Thereafter, the nonmoving party

demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable

finder of fact to find for the nonmoving party at trial.  *Anderson*, 477 U.S. at 248.  In reviewing the

record, "a court must view the facts in the light most favorable to the nonmoving party and draw all

inferences in that party's favor."  *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

Furthermore, a court may not make credibility determinations or weigh the evidence in making its

determination.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133,150 (2000); *see also*

*Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).


**III.    DISCUSSION**

      **A.      Plaintiffs have failed to allege a constitutional deprivation by Defendant Goldstein**

      Plaintiffs first allege that Defendant Goldstein violated their due process rights by filing a

false police report.  Plaintiffs fail to cite, and the Court has not found, a single case from any

jurisdiction that enumerates an affirmative constitutional right to a correct police report.  They

likewise fail to adduce any right to be free from an incorrect police report, absent a resulting

constitutional deprivation of life, liberty, or property.  Plaintiffs' claim against Goldstein thus fails

as a matter of law, as they have not suffered any constitutional harm.

      To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a

right protected by the Constitution or the laws of the United States committed by a person acting

under the color of state law.  *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir.

2003) (*citing Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000)).  Section 1983 does not provide any

substantive rights; rather, it is vehicle through which a plaintiff may vindicate federal rights

conferred elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Thus, Section 1983 "does

not provide 'a right to be free of injury whenever the State may be characterized as the

tortfeasor'—the plaintiff must show a deprivation of a federally protected right."  *Bush v. City of

Phila.*, Civ. A. No. 98-0994, 1999 WL 554585, at *3 (E.D. Pa. July 15, 1999) (*quoting Moser v.

Exeter Twp. Borough of Council Members*, Civ. A. No. 98-3525, 1998 WL 575109, at *1 (E.D. Pa.

Sept. 4, 1998) (internal citations omitted)).

1.      *There is no constitutional right to a true police report*

Courts in the Eastern District of Pennsylvania and elsewhere have held that the filing of a

false police report is not itself a constitutional violation, even when the report is the result of an

intentional conspiracy among police officers to cover up police misconduct.  *Bush*, 1999 WL

554585, at *4 (surveying cases).  Accepting as true Plaintiffs' thin evidence of police misconduct,

and even their conclusion that the report is false, no set of facts can make out a constitutional

violation here as a matter of law.[3]

---

[3] Plaintiffs' Complaint alleged that "Defendants conspired in not properly pursuing the investigation because they knew Watson, and therefore, let their knowledge of Watson color their investigation."  (Compl. ¶ 21.)  As the evidence adduced during discovery has shown no relationship among the officers and Watson, Plaintiffs have changed their theory.  Plaintiffs now assert that the Defendants engaged in this alleged conspiracy because logos and symbols on Watson's car demonstrated he was a firefighter, though admittedly "personally unknown to them and from a different and neighboring town."  (Pls.' Resp. to Facts ¶ 11.)  The Court need not elaborate on this leap of faith, as even an intentional conspiracy to file a false report is not a constitutional violation.  *Bush*, 1999 WL 554585, at *4.

In *Moser*, the plaintiff alleged that a police officer "intentionally, maliciously, and deliberately" minimized the severity of a car accident in the police report and failed to cite the other driver "due to his personal relationship" with the driver's family; she further alleged that another officer approved the false report. *Moser*, 1998 WL 575109, at *3. Judge Buckwalter granted the defendants' motion to dismiss the Section 1983 claim, holding that "[plaintiff's] allegations fail to implicate federal rights." *Id.* In *Bush*, the plaintiff was involved in a car accident with an off-duty police officer. The plaintiff filed a Section 1983 claim after finding that the investigating officer included only the off-duty officer's untrue version of the facts in the police report, and blamed the accident on plaintiff. In granting summary judgment, Judge Hart held that "there is no fundamental liberty interest in having police perform a proper, impartial automobile accident investigation. That they *should* do so is obvious. That the United States Constitution requires them to do so, however, is simply wrong." *Bush*, 1999 WL 554585, at *7. Courts in other Circuits uniformly agree, and Plaintiffs have adduced no evidence here that would support a contrary conclusion of law. *See, e.g.*, *Landigran v. Warwick*, 628 F.2d 736, 744 (1st Cir. 1980) ("We do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution."); *Shock v. Tester*, 405 F.2d 852, 855 (8th Cir. 1969) (affirming that defendants knowingly and intentionally preparing, filing, and failing to correct a false automobile report could not support a cause of action).

> 2.     *Plaintiffs have shown no constitutional harm from a false police report*

While there is no constitutional right to an accurate police report, there is a constitutional right to be free from the consequences of the filing of a false report, if—and only if—those consequences "constitute a deprivation of life, liberty, or property." *Bush*, 1999 WL 554585, at *5

(*citing White v. Tamlyn*, 961 F. Supp. 1047, 1056 (E.D. Mich. 1997)).  Plaintiffs fail to actually plead

any presently existing constitutional deprivation.  In their response to Defendants' motion, however,

Plaintiffs aver that they have suffered two constitutional deprivations: (1) "Plaintiffs have already

been denied a right of full recovery of the damage to their property by virtue of the dissemination

of the report"; (2) "The drunk driver has sued the plaintiffs claiming that he was lawfully operating

his motor vehicle on the basis of the faulty investigation.  Plaintiffs will now expend time, money,

and effort defending a baseless cause of action."  (Pls.' Resp. at 14.)  Neither is a constitutional

harm.

As seems to be a pattern, Plaintiffs fail to cite to any legal authority that would demonstrate

a constitutional right to receive what they consider to be "full recovery" on their insurance claim.

While it should go without saying that a private insurance company's determinations of fault and

recovery do not implicate Section 1983, there is no constitutionally protected "liberty or property

interest in obtaining a large insurance settlement."  *Hill v. Racine*, Civ. A. No. 04-831, 2005 WL

1657093, at *2 (E.D. Wis. July 13, 2005).  Plaintiffs have produced no evidence that they contested

the recovery determination.  In any event, should Watson's insurance company continue to reject

Plaintiffs' claim when presented with evidence that their insured was convicted of DUI, the

insurance company would be the proper entity for Plaintiffs' challenge, not these defendants.

Neither is Plaintiffs' need to defend themselves in Watson's state personal injury lawsuit a

constitutional deprivation of property.  Simply put, Plaintiff Jarrett was the other driver in a serious

collision that left Watson hospitalized and unconscious.  Jarrett has adduced no evidence that

Watson's lawsuit has anything to do with the police report at issue.  Shockingly, Plaintiffs have

volunteered that police reports are not admissible evidence in civil lawsuits in Pennsylvania.  (Pls.'

Resp. ¶ 10) ("Under Pennsylvania law, police reports . . . are not evidential."); *see also Rox Coal Co. v. W.C.A.B. (Snizaski)*, 807 A.2d 906, 914-15 (Pa. 2002) ("A police report prepared by an officer who is not a witness to the accident is inadmissible hearsay evidence and should not be admitted into evidence.") (*citing Holland v. Zelnick*, 469, 478 A.2d 885, 888 (Pa. Super. 1984)).  Without any evidence that the police report has caused a constitutional harm in the state case, Plaintiffs cannot in good faith rest their purported constitutional deprivation on a possibility that is not only unripe, but inadmissible.  Because Plaintiffs have failed to plead a constitutional deprivation, their Section 1983 claim against Defendant Goldstein must fail as a matter of law.  *See Bush*, 1999 WL 554585, at *4-6.  Accordingly, summary judgment is granted as to Defendant Goldstein.

**B.       Without a predicate constitutional deprivation by Officer Goldstein, Plaintiffs' *Monell* claim fails as a matter of law**

In order to establish liability under Section 1983 against a local government unit or a supervisory official, a plaintiff must demonstrate: (1) the deprivation of a constitutional right; (2) that action was taken pursuant to a custom or policy of the local government unit; and (3) that such action was the cause of the deprivation. *Monell v. Dep't. of Social Servs. of N.Y.*, 436 U.S. 658, 691 (1978). As we have held that Plaintiffs failed to demonstrate a predicate constitutional violation, we need not reach the *Monell* claim, as it too must fail as a matter of law. *Estate of Smith v. Marasco*, 318 F.3d 497, 505 (3d Cir. 2003) ("[T]he initial question in a Section 1983 action is whether the plaintiff has alleged a deprivation of a constitutional right at all."); *see also Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 467 (3d Cir. 1989) ("[The municipal defendant] cannot be vicariously liable under *Monell* unless one of [the municipality's] employees is primarily liable under section 1983 itself."). Accordingly, summary judgment is granted to Defendants Harren and Bensalem.

**IV.     CONCLUSION**

For the foregoing reasons, the Court grants summary judgment to Defendants Goldstein,

Price, Harren, and Bensalem and dismisses all claims.[4]  An appropriate Order follows.

---

[4] Plaintiffs also appear to assert an Equal Protection Clause-based Fourteenth Amendment
violation.  Plaintiffs, however, do not even attempt to make a prima facie showing; instead, they
simply refer to Plaintiff Jarrett in passing as a "foreign national."  This is woefully insufficient to
meet Plaintiff's initial burden, and summary judgment will be granted on the Equal Protection
Clause claim.  *See, e.g.*, *Moyer v. Borough of North Wales*, Civ. A. No. 00-1092, 2000 WL
1665132, at *6 (E.D. Pa. Nov. 7, 2000) ("The plaintiff must allege that she (1) is a member of a
protected class; (2) was similarly situated to members of an unprotected class; and (3) was
treated differently from the unprotected class.").

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAUDIO JARRETT and KEYSTONE | : | |
| FREIGHT CORP., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TOWNSHIP OF BENSALEM, et al., | : | No. 07-1480 |
| Defendants. | : | |

## ORDER

AND NOW, this 26st day of March, 2008, upon consideration of Defendants' Motion for Summary Judgment, Plaintiffs' response thereto, and for the foregoing reasons, it is hereby ORDERED that Defendants' motion (Document No. 21) is GRANTED.  The Clerk of Court is directed to close this case.

BY THE COURT:

Berle M. Schiller, J.